UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **CHESTER L. JOHNSON, JR.** | **CIVIL ACTION NO. 22-5816-P** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **CADDO CORRECTIONAL CENTER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed <u>in forma pauperis</u> by <u>pro se</u> plaintiff Chester L. Johnson, Jr. ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 26, 2022. Plaintiff is incarcerated at the Caddo Correctional Center in Shreveport, Louisiana, and claims his civil rights were violated by prison officials. Plaintiff names the Caddo Correctional Center, the Caddo Correctional Center Nursing Agency, Nursing Director Kelli Hayes, the Caddo Correctional Center SIU Department, M. Brossette, M. Merritt, Steven Procell, Jill Shamburg, Randy Leone, JoAnne Beatty, Kelly Tyler, Kim Connelly, Jennifer Jackson, Denise Mills, Brandon Lee, and Mgr. Fredieu as defendants.

Plaintiff has been incarcerated at the Caddo Correctional Center since July 28, 2019. He claims that since his incarceration, his recovery from all physical and medical issues

has been intentionally and deliberately hindered. He claims he has requested everything from protection to adequate medical treatment since his first day at the Caddo Correctional Center. Plaintiff claims he has made reports of all possible threats and has been consistent in his attempts to receive medical treatment.

Plaintiff claims he has described his symptoms and explained his issues with the hope of obtaining treatment and resolving his situation in a timely manner. He claims he has been denied adequate access to medical treatment. He claims his issues have either been downplayed or ignored.

Plaintiff states he has spoken with members of the SIU Department including Sgt. Childress, Sgt. Freddrick Richardson, and Christine Jacobs. He states he has spoken to the Nursing Agency including M. Brossette, Melissa Merritt, Veronica Jones, Steven Procell, Jill Shamburg, Randy Leone, Joanne Beatty, Kelly Tyler, Kim Connelly, Jennifer Jackson, Denise Mills, Manager Fredieu, and Director Kelli Hayes. He claims he has reported several issues that are very serious regarding his safety. He claims some of the issues are potentially life threatening.

Plaintiff claims he has given the Nursing Agency blood samples to be tested on several occasions. He claims he has requested healthier dietary solutions. He claims he has reported everything from a common cold to possible STD and STI infections. He claims every issue was either minimized or ignored. He states he has asthma and has been denied breathing treatments and to have an inhaler after he requested them. He claims he has reported that he could have poisonous chemicals in his skin from jailhouse tattoos.

Plaintiff claims he has been targeted and forced to endure cruel and unusual punishment. He claims the departments are allowed to conduct themselves unjustly and illegally. He claims Caddo Correctional Center does not hold the departments, including the SIU division, the heads of security, and ARP officers, accountable. He claims that after he made his kiosk communications and in person communications, he was punished for the situation, or they did nothing at all. He claims the security department's ERT team has been the primary facilitator for everything. He claims he has been disadvantaged.

Plaintiff claims he has been level 3 ERT for most of his detainment and level 2 ERT for his entire incarceration. He claims this was done to keep him out of general population and to protect the nursing agency and help them to get away with the things they have intentionally done to him.

Plaintiff claims he has suffered both repairable and irreparable damages to his body and appearance. He claims he has been forced to suffer and endure beatings and cruel and unusual punishments. He claims he has suffered daily, both physically and mentally, trying to cope and accept that those who were appointed to protect him have instead chosen to conspire with those who are breaking the law with their numerous attempts to force him to succumb to his injuries.

Plaintiff claims he has been unable to live normally for years. He claims his facial structure, throat, and health are being destroyed.

Plaintiff claims his living situation is too hostile. He claims the administration will not enforce anything on his behalf. He claims the neglect is consistent and intentional. He

claims the nursing agency and ERT team have a vendetta because of his complaints, grievances, and civil actions. He claims they pretend to help him, but they do not.

Plaintiff admits he was seen by M. Brossette, Randy Leone, Kim Connelly, Jennifer Jackson, and Denise Mills but claims they all denied him adequate medical assistance. He claims he was denied hospital visits, receiving results for blood samples, and to see the doctor for immunizations. He claims he received skin cream instead of immunizations. He admits that he did receive diet trays at some point. He claims he was given the wrong medications on several occasions.

Plaintiff admits that he was seen by the medical staff numerous times including on July 29, 2019, November 6, 2019, December 2, 2019, December 11, 2019, January 14, 2020, January 15, 2020, March 20, 2020, August 18, 2020, October 13, 2020, October 20, 2020, December 1, 2020, December 14, 2020, May 21, 2021, August 10, 2021, August 23, 2021, February 17, 2022, March 21, 2022, June 26, 2022, June 27, 2022, April 1, 2022, and April 12, 2022. He further admits that his vitals were taken, and he was given medications.

Plaintiff admits that on December 11, 2019 he received Acyclovir, on March 20, 2020 he received Amoxicillin, on August 18, 2020 he received prescription CTM, on October 20, 2020 he received Tylenol, on December 1, 2020 he received Zyrtec, on December 14, 2020 he received Coricidin and Tylenol, on August 10, 2021 he received Tylenol, on August 23, 2021 he received Tylenol, on April 12, 2022 he received IBU, on June 26, 2022 he received TUMS, on June 27, 2022 he received Allerchor, and on January 5, 2023 he received Amoxicillin. Plaintiff complains that the medications he received were

not actual remedies for his situation. He complains that they refuse to send him to the hospital. Plaintiff claims he has been denied dietary solutions, proper penicillin and antibiotics, and immunizations.

Accordingly, Plaintiff seeks a transfer to another facility, injunctive relief for his protection, and compensatory and punitive damages.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied adequate medical treatment. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a

culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits that he was seen by the medical staff numerous times including on July 29, 2019, November 6, 2019, December 2, 2019, December 11, 2019, January 14, 2020, January 15, 2020, March 20, 2020, August 18, 2020, October 13, 2020, October 20, 2020, December 1, 2020, December 14, 2020, May 21, 2021, August 10, 2021, August 23, 2021, February 17, 2022, March 21, 2022, June 26, 2022, June 27, 2022, April 1, 2022, and April 12, 2022. He admits that his vitals were taken, lab tests were performed, and he was given medications. Plaintiff admits that on December 11, 2019 he received Acyclovir, on March

Page **6** of **11**

20, 2020 he received Amoxicillin, on August 18, 2020 he received prescription CTM, on October 20, 2020 he received Tylenol, on December 1, 2020 he received Zyrtec, on December 14, 2020 he received Coricidin and Tylenol, on August 10, 2021 he received Tylenol, on August 23, 2021 he received Tylenol, on April 12, 2022 he received IBU, on June 26, 2022 he received TUMS, on June 27, 2022 he received Allerchor, and on January 5, 2023 he received Amoxicillin. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have had a heathier diet, breathing treatments, and an inhaler. He claims he should have been given different medications. He claims he should have been seen at the hospital, received the results of his blood samples, and seen a doctor for immunizations. He claims he should have received immunizations instead of skin cream. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil

Page **7** of **11**

Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Classification Claims**

Plaintiff complains that he has been level 3 ERT for most of his detention and level 2 ERT for his entire incarceration. This is not a claim that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not

Page **8** of **11**

create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claims regarding his should be dismissed with prejudice as frivolous.

**Conclusory Claims**

Plaintiff states multiple conclusory claims regarding his incarceration. He states he has been targeted and forced to endure cruel and unusual punishment. He claims he has endured beatings. He claims his living situation is too hostile. He claims the departments are allowed to conduct themselves unjustly and illegally and are not held accountable. He claims that after he complained about issues, he was punished for the incident, or nothing was done. He claims the nursing agency and ERT team have a vendetta because of his complaints, grievances, and civil actions.

A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations. Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986). The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so as to the above claims in his complaint and amended complaint.

Accordingly, the above claims should be dismissed for failure to state a claim on which relief may be granted.

**Transfer**

Plaintiff seeks to be transferred to another facility. The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Thus, Plaintiff has no right to challenge his place of incarceration.

Accordingly, Plaintiff's claims regarding his place of incarceration should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law

or in fact. See <u>Hicks v. Garner</u>, 69 F.3d 22 (5th Cir. 1995); <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993); <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See <u>Douglas v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 24th day of February, 2025.

_____
Mark L. Hornsby
U.S. Magistrate Judge